The next case for argument this morning is 21-3338 Helbachs Cafe v. City of Madison. Good morning and may it please the court. Good morning. Could you give us just one moment please while counsel from the prior case, they're still Yes. Okay, you may proceed. Thank you. I apologize for that. The case before you today, I do not believe is all that complex. It involves a sign posted by a business and the local government's reaction to that sign. My colleagues on the other side, Mr. Eisbrenner, I want to interrupt you. I, I, I'm sorry to do it so quickly, but I'm afraid we don't have a lot of time here. Cases. I do think fairly complex. I want to ask you a question about standing. I want to ask you what specifically, what is your injury pled in the complaint to confer standing on the U.S. courts? Yes, your honor. So the injury is a first amendment retaliation claim. I know that, but, but that's, that's not, that's not injury. Yes. So your honor, because of the retaliation on the first amendment, the business was issued a notice of intent to revoke its food and drink license. And that resulted in their lease and the business being shut down. Well, well, well, hold on for a second. That's not totally what exhibit nine says, right? I mean, I studied exhibit nine very closely. You're referring to the affidavit, right? Yes. The affidavit from the landlord and I, the landlord makes some comments about that, but he also talks about, um, public statements regarding the revocation of the license. Of course, the public statements aren't enough here. Um, and he talks about how the, everything surrounding what had happened, what happened here was very disruptive on the businesses in the, uh, in the strip mall. Yes, your honor. However, he, the landlord also stated that the reason he non-renewed plaintiff's lease was because they were set to lose their food and drink license. But they didn't lose it. Just like the citations were dismissed, the citations were dismissed and they didn't lose their restaurant license. In fact, I think they're still up and operating in a different location, right? Uh, they are no longer in operation, your honor. Um, but they did have to move their, their main business to another location because they lost the lease. You see what I'm getting at here is the affidavit says as much about the commotion caused by the sign as it does about any commotion caused by retaliation from the health department. So we do, we have, we have a unique situation here because we have first amendment retaliation. You've clearly alleged that, but you don't ever allege that their speech was chill. They, the, the, the owner of the cafe puts the sign up, then before he's told by anyone to take it down, he does it on his own. Then he alleges that he's get is clearly you allege the citations and the notice of the loss of license, but neither of these things happen. The citations are dismissed and they don't lose their license. So none of those things have, you don't allege chilled speech. They don't pay any damages. They have no damages. Um, so there's, it's, it's really just this landlord's affidavit, I think. And I'm, I, the district court didn't weigh on this and I'm just not sure that that's enough. Of course we would consider it, right? Cause we're on summary judgment, not in a motion to dismiss, but is, but, but, but it, but it seems to me like the landlord is saying there, there's a lot having to do here with the commotion that was caused by the sign itself and having nothing at all to do with anything that the county did. Well, Your Honor, the, again, I must go back to the landlord terminated or non renewed the lease because of the threat to revoke the food and drink license of plaintiff's establishment. And further, uh, the, the notice of intent to revoke the food and drink license itself stated within it that in order to maintain a licensure to operate, that plaintiff must, uh, must not make any statements that their business or premise. Is a mask free zone. And so I think that absolutely chills speech in order for them to maintain their licensure. They cannot speak out against this, this governmental policy or, or, uh, what the government wants. So I think it absolutely should claim that below that there was, I'm sorry, Your Honor, did you argue below that there was a chilling of speech or present evidence of it? Or was this aspect not raised before the district court? Your Honor, I believe it was raised, uh, through the notice. So when we're talking about the 1st amendment retaliation claim, uh, 1 of the biggest things was the notice to notice, uh, to revoke the food and drink license. Uh, the very 1st bullet point was, you cannot make any statements that, uh, you are a mask free zone and that was raised before the lower court. Um, however, uh, the lower court, you know, said there was enough other things there that, that the notice to revoke wasn't only because of the mask free zone statements. And, and the issue I have with that is, um, those other citations, I believe were issued in violation of emergency order number 8 itself within the order. It explicitly states that people are to be assumed to have a valid reason to wear or not wear a facial covering. The investigators testified in deposition that they did not have that assumption, that they did not believe that anybody had a valid reason to not wear a mask. And so the other instances in, uh, the notice of intent to revoke the food and drink license were all of people not wearing masks being seen in the premise. Well, that is absolutely fine. But I think, I think at least the way I interpret Judge Cheney's question is where is that in the record? Where is it in the record that it says because we received the notice and the notice said you can't engage in further First Amendment activity of protesting, for instance, the mask mandate, the order number 8, we didn't engage in the following conduct or we couldn't engage in the following conduct. When I read the papers, it seems to me that that's, it's just not there. It's, there's, there's no indication from the hell box that they would have engaged in additional conduct absent receiving the notice that said you can't. In other words, they hung the sign, they took the sign down. It caused this tremendous rift, uh, maybe political rift, but it caused this tremendous risk on a rift on the mask mandate. And then they kind of were done with it. Yes, Your Honor. And I believe it's, it's clear by the record and in order to maintain their licensure, they could not, could not challenge or make statements about where did they say they would have? That that's, that's the question. Where did they say they would have engaged in additional protests or they would have engaged in additional speech? They would have put another sign up that said, you don't have to wear a mask. Well, Your Honor, I think it would be very difficult for them to state that because they lost their lease. Their business was extremely, uh, limited in their capacity. They had to move to a new location, reopen. And by that time, uh, you know, the, the masking issue was kind of over with here. Uh, maybe not completely over with, but, but the orders have been challenged multiple times. So I don't think that there was an opportunity. Is that entirely the case? Because don't we have Casey Helbach telling the county when they come to visit him that he has no intention of following the county's rules? Yes, Casey Helbach does state that he was not going to post the sign saying masks are required because he wanted to disagree with it. Uh, he did not believe that the local health department had the authority to issue the orders. And that's being determined right now by the state Supreme Court. Uh, so in Casey's mind, an illegal order is not enforceable and he was not going to execute or abide by an illegal order. Can I go back before we continue to Judge Kirsch's questions about damages? Um, is it your position that the landlord, once he understood about the threat to revoke the food and drink license, he terminated the lease? And even after he found out that the license wasn't going to be revoked after all, he would not renew the lease or withdraw his plans to terminate the lease? That's correct, Your Honor. Uh, not only did he not renew the lease, he didn't even offer the space back. He went to a competing company with plaintiff to offer them the space because, uh, you know, plaintiff built out this, this, it was the anchor store of the building. They built everything out. Uh, the landlord says, you know what, you're, you're about to lose your food and drink license. I need an anchor store here. Uh, so he not renew. That was only a matter of weeks between the notice of the intent to revoke and the rescission of the notice. And so you're saying in that short period, the landlord, uh, terminated the lease? Correct. And I believe in his deposition testimony, I don't have the exact site here, but, uh, he never considered, uh, re-offering the lease to the Hellbox. The, the, um, what, what I, what I'm a little bit concerned about on the lease issue is causation and traceability. Because I imagine a hypothetical situation where someone's business is failing and maybe they want to get out of their lease or they want their lease canceled. So they post a sign like this that says, um, come in here. You don't have to obey the law. I mean, we can debate. I'm just making a hypothetical situation. Okay. Come in here. You don't have to obey the law. The law, law enforcement then says, well, you actually, you do have to obey the law. And they take the sign down and there's no chilling on their first amendment. The landlord then says, based on all the commotion you've caused, we're going to terminate your lease. In other words, it has nothing to do with what law enforcement did. It has nothing to do with the law enforcement retaliation, uh, that caused you to lose the lease. It has to do with the commotion that you've caused. Because you can imagine a situation where the cafe or a cafe like this posts a sign that says, you know, we've got this, what we view as a political law. And if you come in here, you don't have to wear your mask. And they become an internet sensation. They then immediately take down the sign and their business booms. And then they get a notice from the health department that says, like you said, we're going to revoke your license if we don't put up the sign. And they say, we're never going to put up the sign anyway, but we're still going to sue. Now we're going to bring a first amendment retaliation claim. So there's no chilled speech. There's actually no injury. And any other effects like them potentially losing their lease is not traceable to the retaliation or the first amendment activity. It's traceable to the chaos that they caused by posting the sign in the first place, not to what law enforcement did as a result of them posting the sign. Do you follow me there? I do, Your Honor, but I think this case is different because we have testimony from the landlord that said the reason he non-renewed the lease was because of the notice of intent to revoke the food and drink license. The reason was because of the county's actions and the county's actions are very clearly because of the speech that was given. I don't know that he says it that clearly. I know if it was remanded, the district court and the district court wanted to take testimony on it. The landlord was going to testify to that. Perhaps that could be cleared up, but I'm not sure that in that affidavit it says it as clearly as as as as you suggest. Yes, Your Honor, and I had asked to reserve three minutes for rebuttal. So if there are no questions, I would like to reserve the remainder of my time. I have one more question for you, please, and we'll make sure you get enough for rebuttal. Just to follow up on what Judge Kirsch was asking. So what is your evidence here or where's your allegation for standing purposes to support a chilling of speech? You've talked about the closing of the lease, the termination of the lease, but it's a First Amendment retaliation. Yes, Your Honor. What's the chilling of the speech? The chilling of the speech comes in that in order for plaintiff to operate a business, to have the correct licensure to operate their business, they cannot. They are expressly prohibited from stating anything against the mass order that was currently in place. And as the director of public health stated in deposition, the reason she gave this notice was because it went against the messaging of the local government here. Thank you. Thank you. Mr. Bitzer. Morning, Mr. Bittar. Good morning. May it please the court, Ramsey Bittar, Municipal Law and Litigation Group in Waukesha, Wisconsin, on behalf of the defendants in this matter, the appellees, including the city of Madison. There is nothing in this record that shows that their food and beverage license was ever revoked. Mr. Bittar, let me let me interrupt you right away. I want to talk to you about standing, but I want to caution you on one thing. It's your burden to establish standing because you removed this case from state court. If we dismiss for lack of standing, we send it back to state court. Right. So if there's no standing, it goes back to state court. If there is standing, at least it's just I just tell you, it's my view, the plaintiffs here have a very difficult Monell claim. Yes, they do. So let me ask you, is there standing? And, you know, it's your burden to establish standing. And if they're standing and you win in this case is totally over, it's over. If there's no standing, it goes back to state court. So is there standing? Well, as this court knows, standing was not developed below. Right. It was removed because there were three different types of federal claims. I don't believe, as I indicated, that the license was never revoked. Right. And you're right, if there's no standing, it gets remanded back. But I still don't believe that the federal claims are actionable for a number of different reasons that the district court had found. Well, that may be right. But you then have to litigate that in state court. Well, we would if that is the finding of the court, that there's no standing. But it was an issue that was not raised in the lower proceedings. But that happens all the time here. And I mean, we could remand for the district court to take evidence on standing if we want to. But why should there not be standing in a First Amendment violation? We just assume a constitutional violation. They're standing. And there are a lot of cases, a lot of cases out there where it seems like we just assume standing in First Amendment retaliation claims. But in a lot in those cases, I think what Judge St. Eve indicated earlier with her questions, in those cases, it seems to me that there's obvious allegations of chilled First Amendment right. Chilled speech. But I don't know that we have that here. And I don't think that we have that here either. And maybe another way of talking about standing is how the Supreme Court developed the concepts of the interplay between retaliatory arrest and the First Amendment and the Fourth Amendment in the Navitz versus Bartlett case, where it also relied heavily on the Hartman case involving retaliatory prosecution in there. And when you have the existence of probable cause, as we have in this case, there should not be an actionable retaliation claim to begin with. After all, in this case, it's undisputed that there were a number of violations that had been prompted by citizen complaints. Not one of the citations and not one element of the notice of revocation has anything to do with the mask free zone sign. Now, is that entirely correct? Because doesn't the notice reference the sign, even though the citations themselves don't? Right. The notice does reference the sign along with seven other instances. And the reference to the sign, along with seven other instances of violations that are not related to the sign at all. But that reference to the sign, I think, is part of the context and the sequence of events. When a community engages in any kind of zoning enforcement or license enforcement, code enforcement action, as a matter of due process, they have to put into their notice of revocation all the events from beginning to end and all the issues that are before that license holder as to why the local government is seeking revocation of that license. So it's not surprising that there is a scant reference to that mask sign in the notice, but it is not the heart of the notice. It is not the sole reason. It is not what the city... Is that an issue of fact or is that something that could be decided at summary judgment as a matter of law? I think it can be decided as a matter of law because, again, it's not the sole issue. It's not the overwhelming issue in the notice of intent. There are a number of other violations that are undisputed in this case, including citations two and three, for which they had asked a patron to remove her mask. And the third citation involved not putting up the signage that says masks are required. And that is undisputed. And that's at the record at 41. It's proposed facts 90, along with 91, 97 through 98 and many others in that document where these underlying violations are all undisputed in this case. I don't think that when we talk about First Amendment and how does that work out under Nevs and the Hartman case, and when we talk about the cause of action here being Monell, it just can't be the rule that someone can profess they're not going to follow the law. It generates hundreds of local citizen complaints. Well, that happens all the time. It's just called a protest. I mean, that happens all the time, I think at least. But can I ask you about TransUnion and how TransUnion may be able to help us here on the standing issue? There, in that case, we had these misleading credit reports that were sent by TransUnion to creditors, and the Supreme Court found that approximately 1,800 members of a class had standing. Even though they didn't necessarily have a cognizable harm in that they weren't harmed by the letters being sent to the creditors in the sense that the creditors then did something with the letter. The creditors just had the letter. Is that a parallel situation here to the notice that was sent by the Dane County Public Health authorities that said, we intend to revoke your license? Your Honor, I have not reviewed that case, not discussed in the briefing. I'm not familiar with it at all. But the notice here contained a number of different violations. It provided them a date, 20 days out, to hold that hearing. It was eventually dropped. Right. So in some ways, because that was dropped, because the license was never revoked, and by the way, that wasn't... Well, that sure helps your Monell claim, I think, a little bit at least. Well, absolutely. No action by a final policymaker, right? Right. And there's certainly no express policy in this case that supports any kind of retaliatory action. There's no express policy that says any kind of business cannot have certain kind of messages. The express policy was, we're in the midst of a pandemic. Please post a mask required sign. So their express policy claim fails. And in terms of custom and practice, they've offered no evidence in this case that the city has ever engaged in some type of practice of unconstitutionally investigating or issuing notice of revocations against businesses for any kind of speech violations whatsoever. There's zero evidence of that. There was reference earlier to Terrence Wall's affidavit. And although it wasn't a big portion of the summary judgment briefing, his full deposition is in the record. It's record 65. And I would represent to the court that within that deposition, he makes it very clear that his letter and involvement in non-renewing the lease had nothing to do with the mask sign. It had everything to do with business reasons and really being unhappy with the way that Halbex was running its business and not complying with the lease terms and not complying with obligations to submit financial information to Mr. Wall. So he's very clear in that deposition. What is your position on there possibly being an issue of fact with pretext when it appears from the record that Halbex had posted the worker sign but not the mask mandated sign in the front? And then as you noted, the notice did reference their mask free zone sign, even though the cited violations weren't related to that sign. It definitely included that as context. So if you throw all that into a bowl together, what's your response to their suggestion that this creates a pretext issue to address? They have not submitted sufficient evidence to show there's a material dispute of fact on the pretext. The evidence that that's undisputed actually shows that the that the city would have taken the action to enforce the law and public safety here, irrespective of any any any speech, anything related to that mask. It's undisputed in this case that they when the citations two and three were issued, they did not have the masks up. And that's record 41 that's proposed fact 57. And again, some of those other proposed facts that I had mentioned earlier. And they also said that they're not going to issue or their Halbex told the city we're not following these these orders. They had no intention of complying with emergency order number eight. That's record 41. That proposed fact 90 that you have the verified demonstrable complaint from the citizen who said they may even take my mask off and the city attorney confirmed that. And that's also undisputed. That's a number one on one of record 41. And so I don't think without that type of undisputed information and that bonafide complaint, seven, seven different violations over a 10 day period after these requirements are posted online, persistent refusal to cooperate. Pretext is not shown here by them. And if this court looks back at the decision and Dinovich from the Seventh Circuit in the early 2000s, it's cited in the briefs. They cannot show pretext just by their own subjective motivations, nor can they show pretext by nitpicking that type of information. Just as in that case, Dinovich, the quantum and quality of undisputed information here supports that they cannot establish pretext. And I think the district court got that part of its decision. Absolutely correct. Mr. Patar, I want to take a step back here. The district court found that the sign here was incitement and not protected speech. I haven't found any case where there was incitement found unless there was some type of physical violence or unruly mobs associated with it. How do you respond to that? Which I think it's undisputed here. There was no violence, no unruly mobs that turned into violence in this case. There was no such thing. And I think the district court's analysis was simply that that sign told people that upon entering these doors, you will not follow the local health regulation to put a mask. And so the court's concern or analysis was that it was inciting immediate, on the spot, noncompliance with the law. But I don't believe this court needs to even go down that path of whether that speech exception applies. If you do, though, if that's correct, wouldn't that just cover a broad range of speech and take it out of protected speech? If just saying something that you shouldn't obey the law, if that alone is enough for incitement, isn't that problematic for First Amendment purposes? And it could be. And I don't think that this court needs to go down that path because the case can be decided on the fact that the action here would have been taken in the absence of the exercise of any alleged First Amendment speech. The plaintiff simply cannot establish that the actions here were taken but for, under the motivating factor, but for test. And I think that's how the district court certainly got it right in this case. And that's how this court can reach the same outcome without having to get into this exception about inciting imminent and lawless action. At the end of the day, what they've tried to do here is no different than someone saying, well, we're not going to, a business saying, we're not going to follow capacity limits. Or we're not going to follow, we're not going to pay our taxes, we don't like taxes, and they put those kinds of signs on their window. It generates all of these complaints. The government has a right to investigate and determine what's going on. It has nothing to do with retaliation. Can I ask you a question about that? If we find standing here, do we have to address the First Amendment concerns in order to decide the case on Monell? Can we just decide it on policy grounds and avoid the constitutional issue altogether? Absolutely. And if there is standing, it can be decided exclusively on Monell. And there's no evidence here to support Monell policy or practice or custom. And the other attribute they raised was failure to train, at least that they brought before this court. And once again, there too, there's no evidence at all that there's a failure to train, that there's a problem with the way the department goes about instructing its employees how to investigate. Well, there's really no evidence that the failure to train caused any harm there, right? Correct, correct. Even if they're right that there's a failure to train, how did that cause the harm? That's absolutely right. There's no evidence that it's a moving force of any type of harm at all. And so even if you have standing, I think the court can easily resolve the case on Monell alone without having to get down the First Amendment path and having to analyze and think about the Nevis v. Bartlett case and standing and all these other issues. And so with that, Your Honor, unless there's any further questions, the appellees would respectfully request that the summary judgment that was granted be affirmed by this court. Thank you, Mr. Pitar. Mr. Eisbrenner, we'll give you your full three minutes since we asked questions into your rebuttal time. Thank you, Your Honor. So I'd like to start by saying there's a lot of talk about a violation of a law. No legislative body passed any statute, ordinance, rule, anything regarding a law. What we had is an executive order or an order from an executive branch, which is being contested if they could even do it. So when it comes to the First Amendment thing, the encouragement of lawless behavior, there is no definition of what law was being violated. And talking about the citations for a little bit, to show, I think, the strongest evidence that the citations were pretextual is, one, the lower court found on page seven of their order that these citations were prewritten, but one of these prewritten citations was, and I quote, although inexplicably, the date on that violation was recorded as July 15th, 2020. The rule or the amended order that was posted online did not require the mass required signage out front until July 16th. So we have, where plaintiff made a political statement, yes, there was uproar, there was complaints given to the department, and the department said, we need to shut them down. And they issued a citation a day before a requirement was even required under their order. Additionally, the other violations in the notice of intent to revoke, the investigator stated in deposition testimony that he did not believe people had a valid reason not to wear a mask or not wear a mask. So all the violations of seeing people maskless inside the establishment, the order itself states that it was to be assumed that somebody had a valid reason not to wear a mask. That assumption never happened, and that is why those are pretextual. There was no investigation into it. The investigator as well stated that- I wanted, I'm sorry to interrupt, but a question for you about Monell. As I understand your claim, it's an as-applied challenge, correct? Yes, correct, Your Honor. Do you have, on the Monell aspect of the claim, do you have any other evidence that's in the record of other examples as opposed to just your single incident? Well, Your Honor, if you're talking about the- I'm talking about the express policy or widespread practice. By looking through the record, you only put forth evidence about the as-applied challenge to your client and didn't put in any other evidence of how this order had a chilling effect or same violation as to anybody else. Correct, and I believe that it's because this was the first business that was targeted by Public Health Madison-Dane County. Why isn't that a problem under Monell, under your express policy and widespread practice arguments in particular? Well, Your Honor, since this lawsuit was filed, there have been multiple more filed, one of which the state Supreme Court is ruling on. So it was the first business under this order, but there were many afterwards that were, again, I see my time is up if you'd like me to- You can finish answering the question, please. Okay, but there were many businesses afterwards that as well had their speech chilled. There wasn't an adequate investigation. They were threatened with excessive fines or licensure revocation, and they're all working their way through the court system now. Okay, thank you very much. Thanks to both counsel. We will take this case under advice.